IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROBERT FOWLER and ROMETTA  \*
FOWLER,                    \*
                           \*
    Plaintiffs,            \*
                           \*   CV 124-107
    v.                     \*
                           \*
UNIVERSITY HEALTH SERVICES, \*
INC. d/b/a University      \*
Hospital, et al.,          \*
                           \*
    Defendants.            \*

**O R D E R**

Before the Court are Defendants University Health Services, Inc. ("University Hospital"), Piedmont Healthcare, Inc. ("Piedmont"), American Regent, Inc. ("ARI"), Dr. Arthur Chandler ("Dr. Chandler"), Dr. Barry Jenkins ("Dr. Jenkins"), and Donna Floyd-Bearden, RN's ("Floyd-Bearden") (collectively, "Moving Defendants") motions to dismiss (Doc. 18; Doc. 19; Doc. 28) and Plaintiffs' motion for leave to file out-of-time responses to Defendants' motions to dismiss (Doc. 33). For the following reasons, Plaintiffs' motion for leave is **DENIED** and Defendants' motions to dismiss are **GRANTED**.

## I. BACKGROUND

This case arises out of Plaintiff Robert Fowler's ("Mr. Fowler") participation in a clinical trial for Injectafer, a drug intended to treat heart failure with iron deficiency. (Doc. 15, at 5-6.) The trial was sponsored by Daiichi Sankyo and ARI, hosted by University Hospital, and conducted by Dr. Chandler. (Id. at 5.) Trial participants received intravenous injections of either Injectafer or a placebo. (Id.) On January 6, 2022, Mr. Fowler signed a consent form regarding his participation in the trial. (Id. at 6; Doc. 15-1.) The consent form included information regarding the risks associated with participating in the trial. (Doc. 15-1, at 8-12.) One of the risks listed was "[s]kin discoloration that may not go away (if the study drug gets under your skin instead of going in your veins)." (Id. at 10.)

Plaintiffs allege the following. On July 21, 2022, Floyd-Bearden, a nurse in University Hospital's Research Department, administered one of Mr. Fowler's scheduled injections. (Doc. 15, at 5-6.) Mr. Fowler "felt excessive pain at the infusion site" during the infusion and "shortly thereafter noticed the appearance of a large, dark, ink-like stain under the skin on his right arm." (Id. at 6.) Floyd-Bearden never requested assistance, despite her "multiple failed attempts to administer the infusion." (Id. at 7.) Mr. Fowler reported the injection site pain and discoloration to another nurse on July 22, 2022, who told Mr. Fowler that the

2

incident had been reported to University Hospital. (Id.) The following day, Floyd-Bearden told Mr. Fowler that a doctor had examined the report and photos of the discoloration but "only believed that the stain was bruising from the infusion." (Id.) Mr. Fowler brought the discoloration to the attention of hospital staff at two subsequent injection appointments, one about a week later and one about six months later. (Id.) Both times he was told the stain was temporary, despite hospital staff not properly examining him. (Id.)

Plaintiffs allege Piedmont, Daiichi Sankyo, and ARI have refused to provide Mr. Fowler the medical records related to the July 21, 2022 injection. (Id. at 8.) However, Mr. Fowler sought treatment from a dermatologist while the study was ongoing, and a dermatology exam conducted on February 3, 2023 revealed Mr. Fowler has dermal and subcutaneous hemosiderosis. (Id.) Further, according to Mr. Fowler's current medical providers, "the iron stain caused by the infusion of Injectafer is in a layer of skin from which it cannot be removed." (Id.)

Plaintiffs filed the instant suit on July 10, 2024 (Doc. 1) and submitted an amended complaint (the "Complaint") on August 21, 2024 (Doc. 15). The Complaint asserts claims of professional negligence; negligent entrustment, hiring, training, and supervision; intentional and negligent infliction of emotional distress; respondeat superior; and product liability. (Id. at 9-

3

16.) On September 3, 2024, Drs. Chandler and Jenkins filed a motion to dismiss, with Dr. Jenkins seeking dismissal of all claims asserted against him and Dr. Chandler seeking dismissal of the negligent entrustment, hiring, training, and supervision claim against him. (Doc. 18.) Also on September 3, 2024, University Hospital, Piedmont, Dr. Chandler, Dr. Jenkins, and Floyd-Bearden filed a motion to dismiss Plaintiff Rometta Fowler's ("Mrs. Fowler") claim for intentional infliction of emotional distress ("IIED"). (Doc. 19.) On September 20, 2024, ARI filed a motion to dismiss Plaintiffs' claims against it for failure to warn, respondeat superior, and infliction of emotional distress. (Doc. 28.) On November 13, 2024, Plaintiffs filed a "motion for leave to file out of time responses" and responses in opposition to the three pending motions to dismiss. (Doc. 33; Doc. 34; Doc. 35; Doc. 36.) The Moving Defendants responded in opposition to Plaintiffs' motion. (Doc. 39; Doc. 40.) All motions are now ripe for review. The Court first addresses Plaintiffs' motion for a retroactive extension of time, and then turns to the various motions to dismiss.

## II. MOTION FOR EXTENSION OF TIME

The three pending motions to dismiss were filed on September 3, 2024 (Doc. 18; Doc. 19) and September 20, 2024 (Doc. 28). Plaintiffs' deadlines to respond to the motions were,

4

respectively, September 17, 2024 and October 4, 2024. Plaintiffs filed no response by either deadline. Rather, on November 13, 2024 — almost two months past the first deadlines and over a month past the second — Plaintiffs moved to file out-of-time responses to the Moving Defendants' motions to dismiss. (Doc. 33.) Plaintiffs' counsel avers he assigned the responses to the first two motions to dismiss to another member of his firm who simply failed to file the responses. (Id. at 2-3.) Regarding the response to ARI's motion to dismiss, Plaintiffs' counsel attributes the delay to Hurricane Helene, which struck the Augusta area on September 27, 2024. (Id. at 3.) The Moving Defendants oppose Plaintiffs' request to file out-of-time. (Doc. 39; Doc. 40.)

**A. Legal Standard**

Under Federal Rule of Civil Procedure 6(b), the court may, "for good cause," permit a party to file a response after the deadline has passed "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Courts consider four factors when determining whether excusable neglect exists: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x

5

683, 685-86 (11th Cir. 2013) (citing <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993)).

**B. Discussion**

Plaintiffs contend the Court should find excusable neglect for two reasons: first, there would be no prejudice to Defendants since discovery has not yet begun, and second, the delay "should have minimal impact on these proceedings." (Doc. 33, at 2.) The Moving Defendants disagree. Regarding prejudice, they point out that "there is nothing currently staying discovery in this matter," and that responding to Plaintiffs' motion for extension imposes costs on Defendants that otherwise would have been unnecessary. (Doc. 39, at 5.) As to the impact on the proceedings, the Moving Defendants note the discovery deadline was already extended "until it could be determined what to do with the unopposed motions to dismiss." (<u>Id.</u> at 6.) The Moving Defendants also note that Plaintiffs' purported justifications fail to fully account for the length of the delay and they do not attempt to show they have acted in good faith. (<u>Id.</u> at 6-7.)

The Court agrees with the Moving Defendants that Plaintiffs have not demonstrated excusable neglect as contemplated by Rule 6(b). The Moving Defendants have suffered prejudice from this delay because they have now expended time and resources in litigating the issue of delay. Moreover, the length of the delay was substantial, and likely would have been even longer if the

6

Magistrate Judge did not order a scheduling conference, as Plaintiffs' attorney admits he was unaware the filing deadline was missed until after the fact. (Doc. 33, at 2.) While Plaintiffs' attorney represents he assigned the duty to respond to a colleague, he offers no explanation as to why the assignee failed to file a response. (Id. at 2-3.) Moreover, Plaintiffs' hardships attributable to Hurricane Helene account for two weeks: September 27, 2024, through October 11, 2024. (Id. at 3.) They do not account for the additional month it took to file a motion for an extension—perhaps because, as discussed above, Plaintiffs' counsel was unaware of the case's activity (or lack thereof). (Id.) Thus, while there is no indication of bad faith, a balancing of the factors weighs against Plaintiffs. See Yang v. Worrell, 512 F. App'x 997, 1001 (11th Cir. 2013) (declining to retroactively extend a deadline despite no evidence of bad faith when the remaining factors weighed against such extension). Therefore, the Court **DENIES** Plaintiffs' motion for leave to file out-of-time. (Doc. 33.)

### III. MOTIONS TO DISMISS

The Court now turns to the Moving Defendants' motions to dismiss. (Doc. 18; Doc. 19; Doc. 28.) Because the Court denied Plaintiffs' motion to file out of time responses, the motions to dismiss are deemed unopposed. L.R. 7.5, SDGa. ("Failure to respond

7

within the applicable time period shall indicate that there is no opposition to a motion."). Moreover, when an argument is raised that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned. See Holland v. Dep't of Health & Hum. Servs., 51 F. Supp. 3d 1357, 1376 (N.D. Ga. 2014); see also Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000).

Nevertheless, to abide by the Eleventh Circuit's prior guidance, the Court will carefully review the merits of the arguments in the Moving Defendants' motions to dismiss. See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017) (requiring district court to show it considered the sufficiency of the complaint and provide a reason why the complaint failed to state a claim when ruling on an unopposed motion to dismiss).

**A. Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 679. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)). Allegations in a complaint must be taken as true and "read . . . in the light most favorable to the plaintiff[]." Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

**B. Discussion**

The Court considers the arguments in the three motions to dismiss as they pertain to each count in turn.

1. <u>Count One: Professional Negligence (Medical Malpractice)</u>

Count One asserts a claim of professional negligence. (Doc. 15, at 9.) Dr. Jenkins argues Count One fails to state a claim against him because he did not owe a duty to Plaintiffs. (Doc. 18, at 6-8.)

To state a claim of professional negligence against a physician under Georgia law, a plaintiff must establish: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." <u>Pham v. Black</u>, 820 S.E.2d 209, 212 (Ga. Ct. App. 2018) (citations omitted). The doctor-patient relationship contemplated by the first element must be "consensual," and it exists "where the patient knowingly seeks the assistance of the physician and the physician knowingly accepts him as a patient." <u>Id.</u> (citations omitted) (finding no doctor-patient relationship between patient and on-call physician who consulted with patient's treating doctors regarding hospital admission but never met, diagnosed, or treated patient).

The Court finds Plaintiffs failed to establish that a doctor-patient relationship existed between Dr. Jenkins and Mr. Fowler such that Dr. Jenkins owed Mr. Fowler the duty contemplated by Georgia's medical malpractice law. Plaintiffs allege Dr. Jenkins, collectively with the other Defendants named in Count Two,

committed professional negligence by failing to: (1) properly administer Injectafer infusions; (2) prescribe therapy or conservative treatment; (3) assess Mr. Fowler's symptoms after the problematic injection; and (4) examine Mr. Fowler's arm after he reported pain and discoloration. (Doc. 15, at 9-10.) But the only connection Plaintiffs allege between Dr. Jenkins and Mr. Fowler is that Dr. Jenkins was the "chief medical officer responsible for overseeing clinical operations at University Hospital." (Id. at 5.) They do not assert Mr. Fowler ever knowingly sought medical treatment from Dr. Jenkins, that Dr. Jenkins accepted Mr. Fowler as a patient, or that the two had any interaction at all. As such, Plaintiffs failed to establish Dr. Jenkins owed a duty of care to Mr. Fowler. The Court therefore **DISMISSES** Count One as to Dr. Jenkins.[1]

2. Count Two: Negligent Hiring, Entrustment, Training, and Supervision

Count Two, brought against Dr. Chandler, Dr. Jenkins, University Hospital, and Piedmont, asserts a claim for negligently hiring, entrusting, training, and supervising Floyd-Bearden. (Doc. 15, at 11.) As to Drs. Chandler and Jenkins, Plaintiff seemingly alleges only that they are liable for negligently training and supervising Floyd-Bearden. (Id.) Drs. Chandler and

---

[1] Although unclear from the Complaint which Defendants Count One is asserted against, to the extent Plaintiffs seek to bring a medical malpractice claim against ARI, the claim fails for the same reasons. Accordingly, Count One is also **DISMISSED** as to ARI.

11

Jenkins argue there is no legal basis for their liability under Count Two for two reasons: first, because they did not employ Floyd-Bearden, and second, because Plaintiffs fail to plead facts establishing they reasonably could have known Floyd-Bearden would commit the alleged harm. (Doc. 18, at 9-10.) Dr. Jenkins also argues he is not liable because he was not personally involved in Mr. Fowler's care. (Id. at 9.)

"For an employer to be held liable for negligent supervision, there must be sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Novare Grp., Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011). Moreover, "there can be no claim for negligent hiring, training, and supervision of certain individuals where . . . the defendant was not the employer of those individuals." New Star Realty, Inc. v. Jungang PRI USA, LLC, 816 S.E.2d 501, 513 (Ga. Ct. App. 2018).

Here, Plaintiffs do not allege Dr. Chandler or Dr. Jenkins employed Floyd-Bearden. To the contrary, the Complaint alleges Floyd-Beardson "was an employee and or agent of Defendants Piedmont and or University Hospital." (Doc. 15, at 4.) Moreover, the Complaint alleges no facts suggesting Dr. Chandler or Dr. Jenkins knew or should have known about the conduct allegedly giving rise to Mr. Fowler's injuries. (See id.) Thus, Plaintiffs' claim for

12

negligent entrustment, hiring, training, and supervision fails to state a claim against Drs. Chandler and Jenkins. Count Two is therefore **DISMISSED** as to Dr. Chandler and Dr. Jenkins.

3. Count Three: IIED as to Mr. Fowler

Count Three brings an IIED claim against all Defendants based on the mental and emotional harm their actions allegedly caused Mr. Fowler. (Doc. 15, at 12.) Specifically, Count Three alleges Defendants, "individually or by and through the acts and omissions of their employees and or agents, engaged in extreme, outrageous, and reckless conduct" by "failing to properly administer Injectafer infusion, refusing to adequately examine the infusion site, and refusing to treat Mr. Fowler's condition despite being advised . . . of the pain . . . and the appearance of the iron stain . . . and despite knowing the experimental nature of the solution." (Id.)

Dr. Jenkins moves to dismiss Count Three, arguing Plaintiffs did not plead he engaged in the alleged conduct or that he directed any conduct at Mr. Fowler. (Doc. 18, at 10-11.) ARI also moves to dismiss this claim, arguing that Plaintiffs fail to allege it engaged in any intentional, extreme, or outrageous conduct. (Doc. 28, at 12.)

To state an IIED claim under Georgia law, a plaintiff must allege "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the

13

conduct caused emotional distress; and (4) the emotional distress was severe." Mayorga v. Benton, 875 S.E.2d 908, 913 (Ga. Ct. App. 2022) (citation omitted). "Additionally, it is well settled that the alleged conduct must have been directed at the plaintiff in order to be actionable under a theory of [IIED]." Id. (citation and internal quotations omitted). Whether conduct is sufficiently extreme and outrageous is a question of law. Joyner v. Lifeshare Mgmt. Grp., LLC, No. CV417-174, 2018 WL 6092743, at *4 (S.D. Ga. Nov. 21, 2018). To meet the requisite threshold, the alleged conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Turnbull v. Northside Hosp. Inc., 470 S.E.2d 464, 466 (Ga Ct. App. 1996)).

As discussed above, Plaintiffs do not allege Dr. Jenkins personally interacted with Mr. Fowler in any way. Accordingly, Plaintiffs fail to allege Mr. Jenkins engaged in extreme and outrageous conduct directed at Mr. Fowler.

As to ARI, the only conduct alleged is sponsorship of the clinical trial. (Doc. 15, at 5.) This does not meet the high threshold for establishing extreme and outrageous conduct. In Joyner, the court found an employer's conduct was not sufficiently outrageous when it allegedly failed to remove a patient from an employee's care despite the employee making several complaints about the patient's combative conduct. 2018 WL 6092743, at *4.

14

Here, unlike in <u>Joyner</u>, there is no indication any of the alleged conduct was brought to ARI's attention, and sponsorship of a clinical trial alone is certainly not "beyond all bounds of decency" or "utterly intolerable in a civilized community." <u>Id.</u> (citation omitted). Thus, because Plaintiffs fail to allege Dr. Jenkins or ARI engaged in the requisite conduct to state an IIED claim, Count Three is **DISMISSED** as to Dr. Jenkins and ARI.

    4. <u>Count Four: IIED as to Mrs. Fowler</u>

Count Four asserts an IIED claim on behalf of Mrs. Fowler against all Defendants based on the same conduct alleged in Count Three. (Doc. 15, at 13.) The Moving Defendants seek dismissal, arguing Plaintiffs have not alleged they directed any conduct at Mrs. Fowler. (Doc. 19, at 7-10; Doc. 28, at 11.) ARI also argues Count Four should be dismissed because Plaintiffs do not allege ARI engaged in intentional, extreme, or outrageous conduct. (Doc. 28, at 12.)

Based on the legal standard for IIED claims, as detailed in the previous section, the Court finds Count Four fails because the conduct alleged was directed solely toward Mr. Fowler, not Mrs. Fowler. (Doc. 15, at 13.) Moreover, as previously noted, Plaintiffs fail to allege any conduct by ARI, regardless of who it was directed toward, that rises to the necessary level of outrageousness. Thus, Plaintiff fails to state a claim for IIED in Count Four.

15

Though Plaintiffs identify Count Four as an IIED claim, they simultaneously characterize it as a negligent infliction of emotional distress ("NIED") claim. (Id.) Because this suggests Plaintiffs may have intended to bring Count Four as a NIED claim, the Court briefly considers the viability of Count Four under a NIED theory. The Moving Defendants argue Count Four still fails because Plaintiffs do not allege Mrs. Fowler suffered a physical injury because of the alleged conduct. (Doc. 19, at 10.) Under Georgia law, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82, 84 (Ga. 2000) (citation omitted). Plaintiffs do not allege Mrs. Fowler suffered any sort of physical injury. (Doc. 15, at 13.) Thus, Count Four also fails to state a claim for NIED. Count Four is therefore **DISMISSED** as to all Moving Defendants.

   5. Count Five: Respondeat Superior

Count Five asserts ARI and several other Defendants are liable under a theory of respondeat superior for the actions of their agents, servants, and employees when providing care to Mr. Fowler. (Doc. 15, at 14.) ARI moves to dismiss Count Five because Plaintiffs do not allege it employed the medical providers whose conduct is at issue. (Doc. 28, at 9-10.)

16

"[U]nder the respondeat superior theory, an employer is liable for the torts of an employee if the employee was acting in the scope of his employment and on the business of the employer at the time of the injury." VanNewhouse v. Effingham Cnty. Bd. of Commissioners, No. CV 4:24-006, 2024 WL 584447, at *2 (S.D. Ga. Feb. 13, 2024) (quoting Ga. Interlocal Risk Mgmt. Agency v. Godfrey, 614 S.E.2d 201, 204 (Ga. Ct. App. 2005)) (citation and internal quotations omitted and alterations adopted). An employer may also be vicariously liable for an independent contractor's work if it controls the time, manner, and method of the contractor's performance of the work. Broadnax v. Daniel Custom Const., LLC, 726 S.E.2d 770, 773-74 (Ga. Ct. App. 2012).

The Court finds Plaintiffs have not sufficiently alleged ARI possessed the requisite control over the medical personnel administering Injectafer to Mr. Fowler to hold ARI vicariously liable. Plaintiffs do not allege ARI employed any of the medical staff, and the only purported control it had over the staff was that "personnel conducting the Injectafer study were doing so at the direction of the sponsor company [ARI]." (Doc. 15, at 14.) This conclusory assertion is not enough to show ARI controlled the time, manner, or method of the medical personnel's conduct. See

17

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57).  As such, Count Five is **DISMISSED** as to ARI.[2]

### 6. Count Six: Product Liability (Failure to Warn)

Count Six brings a product liability claim for failure to warn against ARI and Daiichi Sanko.  (Doc. 15, at 15.)  ARI moves to dismiss on four grounds: (1) it did not have a duty to warn Mr. Fowler; (2) it fulfilled its duty to warn Mr. Fowler's physician; (3) Mr. Fowler received warning about the risks of the Injectafer study; and (4) Mr. Fowler has not sufficiently alleged proximate cause.  (Doc. 28, at 7-8.)

"To prevail on a failure to warn claim under Georgia law, a plaintiff must prove that (1) the defendant had a duty to warn; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries."  Fields v. Ethicon, Inc., No. 4:21-CV-00020, 2023 WL 2666112, at *4 (S.D. Ga. Mar. 28, 2023) (citing Dietz v. Smithkline Beecham Corp., 598 F.3 812, 815 (11th Cir. 2010)).  In the context of prescription drugs, Georgia law adheres to the learned intermediary doctrine for failure to warn claims.  See McCombs v. Synthes (U.S.A.), 587 S.E.2d 594, 595 (Ga. 2003).  Under this doctrine, "the manufacturer of a prescription drug or medical device does not have a duty to warn

---

[2] To the extent Plaintiffs seek to hold Dr. Jenkins liable under a theory of respondeat superior, the claim similarly fails.  For the reasons discussed with regards to Count One, Plaintiffs have failed to plead Dr. Jenkins was the medical personnel's employer.  Therefore, Count Five is **DISMISSED** as to Dr. Jenkins.

18

the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer." Id. (citations omitted). "[T]he manufacturer's warnings to the physician must be adequate or reasonable under the circumstances." Id. (citations omitted).

Plaintiff alleges ARI, the drug manufacturer, did not adequately warn Mr. Fowler of the risk of permanent discoloration. (Doc. 15, at 16.) However, under the learned intermediary doctrine, ARI's duty was to warn the physician administering the Injectafer, not Mr. Fowler. Because Plaintiffs do not allege ARI failed to warn the administering physicians of the risk of discoloration, their claim in Count Six fails. Moreover, Plaintiffs attached a waiver to the Complaint, signed by both the coordinating nurse *and* Mr. Fowler, which clearly warns of a risk of permanent discoloration. (Doc. 15-1, at 10, 20; Doc. 15, at 7.) For these reasons, Count Six is **DISMISSED** as to ARI. As such, the Court does not address the issue of proximate cause.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion for extension of time (Doc. 33) is **DENIED** and the Moving Defendants' motions to dismiss (Doc. 18; Doc. 19; Doc. 28) are **GRANTED.** Count One is **DISMISSED** as to Dr. Jenkins and

19

ARI; Count Two is **DISMISSED** as to Dr. Jenkins and Dr. Chandler; Count Three is **DISMISSED** as to Dr. Jenkins and ARI; Count Four is **DISMISSED** as to all Moving Defendants; Count Five is **DISMISSED** as to Dr. Jenkins and ARI; and Count Six is **DISMISSED** as to ARI. The Clerk is **DIRECTED** to **TERMINATE** Dr. Jenkins and ARI as Parties to this action.

    **ORDER ENTERED** at Augusta, Georgia, this _1ST_ day of _April_, 2025.

                                              HONORABLE J. RANDAL HALL
                                              UNITED STATES DISTRICT JUDGE
                                              SOUTHERN DISTRICT OF GEORGIA